KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
BRIAN G. SMILEY, State Bar No. 180658
Supervising Deputy Attorney General
MAX FEINSTAT, State Bar No. 274712
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 322-5431
 Fax: (916) 324-5322
 E-mail: Max.Feinstat@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAMMY L. PAGE,** | 1:16-cv-00522-JLT |
| Petitioner, | **MOTION TO DISMISS** |
| v. | |
| **AUDREY KING,** | |
| Respondent. | |

Petitioner is currently confined awaiting trial on a SVPA petition filed against him in 2006. He filed the instant action under 28 U.S.C. 2241 in 2012 in the Northern District. The District Court dismissed the petition on abstention grounds. The Ninth Circuit subsequently remanded the case in order for the District Court to determine whether it had jurisdiction under 28 U.S.C. 2241 to hear the petition. The District Court found that it did not, and transferred the case to the Eastern District.

This Court should dismiss the petition on abstention grounds and deny the pending motion to amend as moot. As discussed below, Petitioner's situation has not changed since the Northern District previously dismissed his petition. Thus, the Northern District's reasoning should be applied by this Court.

# BACKGROUND

The District Court in *Page v. King*, C 13-5352 WHA (PR) (N.D. Cal. Sept. 21, 2015)("*Page*, 13-5352")[1] set out Petitioner's confinement history, in relevant part:

## I. SVPA COMMITMENT PROCEEDINGS

The SVPA authorizes the state to file a petition to civilly commit a person as a sexually violent predator ("SVP") if he (1) has been convicted of a sexually violent offense and (2) suffers from a diagnosed mental disorder that makes it likely that he will engage in sexually violent criminal behavior in the future. *See* Cal. Welf. & Inst. Code § 6600(a)(1). The commitment petition must be filed while the individual is still in custody under a determinate prison term, as a result of parole revocation, or under a special SVPA-authorized "hold." *Id*. § 6601(a)(2). After the petition is filed, the superior court must hold a probable cause hearing, and then a jury trial at which the state must prove beyond a reasonable doubt that the individual meets the criteria as an SVP. *Id*. §§ 6602-03. Originally, the SVPA provided for commitment for two-year terms, at the end of each the individual could be recommitted after a new trial for an additional two-year term. *See Orozco v. Superior Court*, 11 Cal.Rptr.3d 573, 578-79 (Cal. Ct. App. 2004). In November 2006, California passed Proposition 83, which extended the term of commitment or recommitment to an indeterminate period, thus obviating the need for a recommitment proceeding for any individual committed or re-committed after passage of the proposition. *Seeboth v. Allenby*, 789 F.3d 1099, 1101 (9th Cit. 2015) (citing cases).

## II. PETITIONER'S COMMITMENT PROCEEDINGS

Petitioner has a history of convictions for sexual offenses dating back to the 1970s. He completed his sentence for the last of these convictions in 1997. Several months before his sentence was complete, however, prosecutors with the Alameda County District Attorney's Office filed a petition in the superior court to commit him under the SVPA. In 2004, he was tried on that petition, and a jury found him to be an SVP. Based on that finding, the superior court civilly committed him to a state mental health facility for a period of two years.

Petitioner appealed the judgment to the California Court of Appeal. In affirming, the California Court of Appeal summarized the three predicate offenses presented by the prosecution to prove that petitioner qualified for commitment under the SVPA. *See People v. Page*, 2005 WL 1492388 * 3-5 (Cal. Ct. App. June 24, 2005). In 1971, petitioner was convicted of rape, second degree robbery and burglary of Antoinette B. He knocked on her door and asked to use her telephone, claiming to have been beaten. She allowed him in, and he used a pocket knife to hit her on the back and knock her down. He choked her until she "passed out," tore off her clothes, continued to hit her, and then he raped her. As he left, he took $40 from her purse.

The next predicate offense took place in 1977, when petitioner was convicted of rape, oral copulation, sodomy, second degree robbery, and burglary. At around 2:00 a.m., petitioner entered the home of Katherine B. He covered her head with a towel and began to choke her on the living room couch until she passed out. He pulled off her clothes and orally copulated her. For the next four or five hours, he alternately

---

[1] As discussed below, *Page*, 13-5352 was filed and litigated while this case was pending on appeal.

raped her and attempted to sodomize her.  He also bit her breasts, and then he led her into the bedroom, where he repeatedly sodomized her or attempted sodomize her while she continued to complain of "extreme pain."  While raping her, petitioner said, "Please don't make me angry and have to do something to you," and she tried to stay quiet and limp because her two young daughters, ages seven and ten, were sleeping in a rear bedroom.  Before leaving, petitioner stole a credit card and $16 from Katherine's purse.  Katherine suffered abrasions and vaginal and rectal bleeding for four to five days.

The third predicate offense was for rape, second degree robbery, sodomy, and residential burglary in 1987.  Petitioner entered the home of Leona L., who was fifty-nine years old, at around 1:30 a.m.  After a struggle, petitioner began choking her and forced her onto a couch, where he raped her.  He told her, "Loosen up.  Be nice to me.  If you're not nice to me, I may kill you."  He put a quilt over her head, and tried to sodomize her.  She took a kitchen knife and threatened to stab petitioner, but he took it from her and poked her with it several times.  He then sodomized her, and beat her further, knocking her dental bridge from her mouth.  Leona suffered "excruciating anal and rectal pain that caused rectal bleeding," as well as back and leg pain for months.  Before leaving, petitioner took six dollars from the kitchen table and three bottles of wine, and he said, "Okay, now you can call the police."

The prosecution also presented the opinions of two mental health professionals, Drs. Finnberg and Putman, that petitioner suffered from "paraphilia not otherwise specified [N.O.S.]," "sexual sadism" and antisocial personality disorder; that petitioner remained in the highest risk category of recidivism rate (52%) in the next 15 years; that an age-related decline in the likelihood that he would commit sexual offenses would not be expected; that he continued to be a danger to others; and that he remained an SVP.  These evaluations were based in part on petitioner's aversion to mental health treatment at the state hospital where he was detained, his three predicate sex offenses, and a number of other incidents involving petitioner's sexually violent behavior against women.

Petitioner's appeal to the California Supreme Court was summarily denied.

While the commitment petition was pending, and before he was tried, petitioner filed a number of federal habeas petitions.  These petitions were dismissed on various grounds, including two dismissed on abstention grounds under *Younger v. Harris*, 401 U.S. 37 (1971).  *See, e.g., Page v. Lockyer*, No. C 03-2282 VRW (PR) (N.D. Cal., May 28, 2003); *Page v. Lockyer*, No. C 03-2364 VRW (PR) (N.D. Cal., June 6, 2003).  Petitioner appealed from the latter of these dismissals, and the United States Court of Appeals affirmed.  A subsequent pretrial federal habeas petition, asserting the violation of the right to a speedy trial, was denied on its merits, *see Page v. Lockyer*, No. C 03-4797 VRW (PR) (N.D. Cal. May 26, 2005) (Order), and that decision was affirmed on appeal, *Page v. Lockyer*, 200 Fed. Appx. 727, 727-29 (9th Cir. 2009).

After petitioner was tried in state court and committed under the SVPA in 2004, he filed federal habeas petition challenging that commitment decision.  *See Page v. Mayberg*, No. C 05-4141 VRW (PR) (N.D. Cal.).  That petition was denied on its merits on April 5, 2007.

III. PETITIONER'S RE-COMMITMENT PROCEEDINGS

Before petitioner's two-year civil commitment term expired, prosecutors petitioned the Alameda County Superior Court to re-commit petitioner under the

SVPA for another two-year term. In May 2006, following two continuances requested by petitioner's counsel, the superior court held a hearing and found probable cause. That determination relied on the same predicate offenses described above, as well as upon two new mental health evaluations, conducted by Drs. Coles and Hupka, in 2006 concluding that petitioner remained an SVP. The prosecutor amended the re-commitment petition in December 2006 to seek an indefinite (as opposed to two-year) re-commitment term based on the recent changes to the SVPA under Proposition 83. Four new mental health evaluations were performed in 2012, two of which concluded that petitioner remained an SVP, and two of which did not, based upon his age.

Although the re-commitment petition was initially filed in February 2006 and amended in December 2006, and probable cause was found in May 2006, petitioner has still not been tried on the petition. Respondent was ordered to explain this lengthy delay, and has submitted a declaration by the prosecutor assigned to the case since 2009, as well as the state court records of the entire re-commitment proceedings since they began in March 2006 (Resp. Supp. Br. (Dkt. 27) Exhs. A, B). Respondent attempted to obtain a declaration from the attorney representing petitioner in the re-commitment proceedings, but counsel declined to provide one, citing the attorney-client privilege (*id*. Exh. C ¶¶ 3-4). Petitioner has submitted a responsive brief, but he does not dispute the explanation for the delay set forth in the state court records and the prosecutor's declaration.

The state court records and the prosecutor's declaration show that the parties have appeared over 40 times in court since the probable cause determination in May 2006, and each time the trial date has been put off, in most instances by petitioner (*id*. Exhs. A, B at ¶ 13). These records show an aggregate of approximately seven years of delay since the probable cause hearing were caused by petitioner or his attorney filing numerous motions, pro se petitions, requesting continuances, and waiving the setting of a trial date (*id*. Exh. B at ¶13m, r-v, z, aa, bb, dd-gg, ii-mm, oo-yy; Exh. A at 386, 410, 412, 416, 418, 420, 428, 430, 432, 436, 438, 440, 442, 446, 448, 450, 452, 454, 458, 460, 462, 464, 466, 468, 470, 472; Supp. Reply (dkt. 36) Ott. Decl. ¶ 2). In no instance has petitioner or his attorney requested that the trial date be set, and only one six-day continuance was requested by the State, in December 2006 (*id*. Exhs. A, B). The remainder of the delay, totaling approximately two years, is not explained by the state court minute orders or by the prosecutor's declaration because they precede the current prosecutor's assignment to the case in July 2009 (*ibid*.). Even this unexplained portion of the delay was likely caused by the defense, however, because the ordinary practice in these proceedings is to continue the setting of the trial date only at the request of the defense (*id*. Exh. B at ¶¶ 8-9). At the most recent hearing in his re-commitment proceeding, on August 7, 2015, the defense again requested that the case be continued again to January 18, 2016, for setting a trial date at that time (Supp. Reply (dkt. 36) Ott. Decl. ¶2). Petitioner does not dispute the foregoing explanation of the delay by the prosecutor and the state court records, nor does he offer any alternate explanation of his own.

Petitioner has challenged his ongoing re-commitment proceedings in a federal habeas petition before. *Page v. King*, No. C 12-3721 WHA (PR). That petition was dismissed without prejudice on abstention grounds because the trial on petitioner's re-commitment petition had not yet taken place. Petitioner appealed the judgment, and the United States Court of Appeals denied a certificate of appealability. Petitioner thereafter filed a motion for reconsideration in the district court, which was denied. When he appealed the denial of reconsideration, the Court of Appeals granted a certificate of appealability in which it ordered the parties to explain the delay in the 2006 re-commitment proceedings. That appeal is currently pending. *See Page v. King*, No. 13-17352 (9th Cir.).

*Page*, 13-5352 Dkt. 38 at 2-7.

Petitioner filed the instant petition in the Northern District under case number 12-3721 on July 16, 2012. (Dkt. 1.) The court dismissed the petition on its own motion on October 25, 2012, on abstention grounds. (Dkt. 18.)

On February 25, 2016, the Ninth Circuit vacated the district court's decision and remanded for the court to consider whether it had jurisdiction to rule on the petition. (Dkts. 40, 41.) The district court subsequently ordered the case transferred, where it was reassigned under the instant matter number. (Dkts. 43, 44.)

While this case was pending on appeal, Petitioner filed a second petition for writ of habeas corpus in case number 13-5352 on November 19, 2013. *Page*, 13-5352 Dkt. 1. On September 18, 2015, after extensive briefing by the parties, the court dismissed the petition without prejudice, subject to refiling in the Eastern District.[2] *Page*, 13-5352 Dkt. 38. Petitioner requested a certificate of appealability from the Ninth Circuit, which issued an order to show cause as to why the case should not be transferred given its decision in 13-3721. *Page*, 13-5352 Dkt. 41. The Ninth Circuit dismissed the order to show cause and affirmed the District Court's dismissal of the petition on June 30, 2016. *Page*, 13-5352 Dkt. 43.

## DISCUSSION

### I. PETITIONER'S CLAIMS

In his original petition, Petitioner challenges his 2004 commitment claiming that he was committed under a "fake diagnosis." (Dkt. 1 at 10-17.) He argues that this entitles him to "prospective injunctive relief" and release. (Dkt. 1 at 19-21.) He also claims that special circumstances warrant federal intervention. (Dkt. 1 at 25.)

In Petitioner's proposed amended petition, he claims that (1) Special circumstances warrant federal intervention (Dkt. 68 at 10-12); (2) his 2006 recommitment proceedings are "void" because his 2004 commitment was invalid (Dkt. 68 at 12-14); (3) his update evaluation was

---

[2] The district court also observed that each of Petitioner's claims failed to state a federal claim. *Page*, 13-5352 Dkt. 38 at 7-17.

performed pursuant to an "underground regulation" (Dkt. 68 at 15-17);[3] and (4) he must be released because all of the evaluations he underwent in 2012 did not conclude that he was still an SVP (Dkt. 68 at 17-21).

## II. PETITIONER'S CHALLENGE TO HIS 2004 COMMITMENT IS NOT COGNIZABLE

Petitioner claims that his 2004 commitment order must be overturned because he was committed under a "fake diagnosis" which has subsequently been disallowed by the state. (Petition at 10-15.)  This claim is not cognizable because (1) Petitioner is no longer in custody for his 2004 commitment; (2) even if he were able to challenge the commitment, the petition would be barred as successive; and (3) the petition would be untimely.

As the district court in *Page*, 13-5352 noted:

> Respondent argues that any federal claims challenging the 2004 judgment committing him under the SVPA must be brought under 28 U.S.C. 2254, not under 28 U.S.C. 2241.  Section 2254 is the proper basis for a habeas petition brought by "a person in custody pursuant to the judgment of a State court."  Petitioner is not presently in custody under a state court judgment.  The only civil commitment judgment against him is from 2004, which imposed a two-year commitment term that expired long ago.  Since the expiration of that term in 2006, petitioner has been held pursuant to the state court's determination of probable cause on the recommitment petition.  As he is still awaiting trial on that petition, there is no state court judgment holding petitioner in custody.  The proper basis for a habeas petition by a petitioner in custody who is not held "pursuant to the judgment of a State court," *ibid.*, for instance a pretrial detainee, is 28 U.S.C. 2241, not 28 U.S.C. 2254.  *See McNeely v. Blanas*, 336 F.3d 822, 824 n.1 (9th Cir. 2003).  As petitioner is not in custody pursuant to the judgment of a state court, but rather is a detainee awaiting trial on the re-commitment petition, the instant federal petition falls under Section 2241, not Section 2254.
>
> Respondent argues that even if the instant petition falls under Section 2241, it may not challenge the 2004 judgment because he is no longer in custody on that judgment.  There is no federal jurisdiction over a federal habeas petition, under either Section 2241 or 2254, if the petitioner is not in custody pursuant to the judgment being challenged in the petition.  *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989).  As petitioner is not in custody pursuant to the 2004 judgment, whose commitment term has expired, he may not challenge his 2004 judgment in a federal habeas petition.  To the extent his claims challenge that judgment, therefore, they are dismissed. In light of this conclusion, respondent's alternative grounds for dismissing claims against the 2004 judgment, such as that they are successive or untimely, need not be considered.

*Page*, 13-5352 Dkt. 38 at 7-8.  Because Petitioner is not in custody on his 2004 commitment, his claim challenging that commitment is not cognizable.

---

[3] It is not clear which evaluation Petitioner is referring to.

Even if this Court were to find that Petitioner could challenge his 2004 commitment, such a challenge would be barred both as successive and untimely.

Petitioner previously filed a 28 U.S.C. § 2254 petition for writ of habeas corpus in this Court, challenging the same 2004 civil commitment judgment he challenges in the instant petition. *Page v. Mayberg*, 2007 U.S. Dist. LEXIS 102634, *1 (N.D. Cal. 2007 (No. C 05-4141 VRW)). The former petition was denied on the merits. *Id*. Respondent has reviewed the Court of Appeals's PACER site entries for Petitioner and has not found any request for permission to allow the instant petition. *See* 28 U.S.C. § 2244(b)(3)(A).

While it appears that Petitioner raises different issues now than in the original proceeding, it matters not at this stage of the proceedings. *See* 28 U.S.C. § 2244(b)(1)-(2). Rather, the pivotal facts are that Petitioner previously filed a petition for writ of habeas corpus in federal court challenging the same judgment challenged here, the prior petition was denied "on the merits," and petitioner has not obtained permission from the Court of Appeals to file a second or successive petition. Accordingly, this Court lacks jurisdiction over the instant petition, and must dismiss it.

Additionally, AEDPA imposes a one-year statute of limitations on the filing of federal habeas petitions challenging state judgments.[4] 28 U.S.C. § 2244(d)(1). Ordinarily, the statute of limitations period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id*.; § 2244(d)(1)(A). Under that chronology, the limitations period commenced against Petitioner on December 20, 2005, ninety days after the California Supreme Court denied review. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999); Sup. Ct. R. 13. The limitations period expired a year later on December 20, 2006. Although a pending state petition for collateral review will ordinarily toll the limitations period (28 U.S.C. § 2244(d)(2)), Respondent has found no record of Petitioner having such a proceeding pending during that time period. To the extent Petitioner had

---

[4] AEDPA's statute of limitations applies to SVP civil commitment judgments. *See, e.g.*, *Revels v. Sanders*, 519 F.3d 734, 740 (8th Cir. 2008); *Garibay v. King*, 2012 U.S. Dist. LEXIS 157160, *16-17 (E.D. Cal. 2012); *Senty-Haugen v. Ludeman*, 2011 U.S. Dist. LEXIS 64170, *10-12, *adopted* 2011 U.S. Dist. LEXIS 61549 (D. Minn. 2011).

any federal proceeding pending during that time period, it did not toll the limitations period. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

For all of the foregoing reasons, Petitioner's claims challenging his 2004 commitment are not cognizable.[5]

### III. THIS COURT SHOULD ABSTAIN FROM ADDRESSING ANY CLAIM REGARDING THE 2006 RECOMMITMENT PETITION

To the extent Petitioner attacks his current custody on the 2006 recommitment petition, this Court should abstain from ruling on those claims.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court delineated the parameters of the abstention doctrine, the "longstanding policy against federal court interference." *Younger*, 401 U.S. at 56. Under that doctrine, "With the notable exception of cases involving double jeopardy and certain speedy trial claims, federal habeas relief, as a general rule, is not available to defendants seeking pretrial review of constitutional challenges to state criminal proceedings . . . ." *In re Justices of Superior Court Dept. of Mass.*, 218 F.3d 11, 19 (1st Cir. 2000); *accord Carden v. State of Montana*, 626 F.2d 82, 84 (9th Cir. 1980); *Drury v. Cox*, 457 F.2d 764, 764-65 (9th Cir. 1972) (per curiam); *see Justices of Superior Court*, 218 F.3d at 17 (citing case examples). Only under "extraordinary circumstances" may a habeas petitioner circumvent the abstention doctrine. *Younger*, 401 U.S. at 53; *cf. Drury*, 457 F.2d at 764-65 ("Only in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts.").

The instant petition should be dismissed for precisely the same reasons outlined in the Northern District Court's October 25, 2012, order of dismissal:

> Under the principles of comity and federalism cited in *Younger*, a federal court should not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief absent extraordinary circumstances. *See Younger*, 401 U.S. at 43-54. Interference is appropriate only upon a showing of the state's bad faith or harassment, or a showing that the statute challenged is "flagrantly and patently

---

[5] To the extent the claims in Petitioner's proposed amended petition challenge his 2004 commitment, the motion to amend should be denied as futile for the same reasons.

violative of express constitutional prohibitions." *Id*. at 53-54 (cost, anxiety and inconvenience of criminal defense not kind of special circumstances or irreparable harm that would justify federal court intervention; statute must be unconstitutional in every "clause, sentence and paragraph, and in whatever manner" it is applied); *Carden v Montana*, 626 F.2d 82, 84 (9th Cir 1980) (only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other special circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate). The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*., 457 U.S. 423, 432 (1982). *Younger* applies to the pending SVPA re-commitment proceedings against petitioner: the proceedings are judicial in nature, involve important state interests and afford petitioner an adequate opportunity to raise constitutional issues. *See ibid*.

There is no indication that *Younger* abstention is not appropriate because SVPA, as applied to him or on its faith, is "flagrantly and patently violative of his constitutional rights." Indeed, the dismissals of his prior petitions on *Younger* grounds and subsequent affirmances on appeal indicate that it is appropriate to apply *Younger* to him. Moreover, as noted in connection with his prior cases, SVPA has in fact withstood constitutionally scrutiny in the Supreme Court of California, *see Hubbart v. Superior Court*, 19 Cal. 4th 1130 (1999), and similar laws from other states have withstood constitutional scrutiny in the Supreme Court of the United States, *see Kansas v. Hendricks*, 521 U.S. 346 (1997); *Seling v. Young*, 531 U.S. 250 (2001). Nor does petitioner show bad faith or harassment.

Under the rationale of *Younger*, the petition must be dismissed without prejudice to refiling after SVPA re-commitment proceedings challenged herein, including appeal, are completed.

(Dkt. 18 at 2-3.)

The Ninth Circuit reversed that dismissal, and remanded for the District Court to determine whether it had jurisdiction. The District Court found that the venue was improper, and transferred the case. However, nothing regarding Petitioner's custody status has changed, such that the Northern District Court's dismissal on abstention grounds should not be followed. As noted by the court in *Page*, 13-5352, since 2012, any delay in trying Petitioner on the 2006 recommitment petition is solely attributable to the defense.[6] *Page*, 13-5352 Dkt. 38 at 5-7.

Petitioner asserts various reasons why his petition should be considered. Respondent will briefly address them here.

---

[6] This Court can take judicial notice of the pleadings in *Page*, 13-5352, and the exhibits attached. Fed. R. Evid. 201; *see also Headwaters Inc. v. United States Forest Service*, 399 F.3d 1047, 1051 n. 3 (9th Cir. 2005) (taking judicial notice of docket in another case); *Mullis v. U.S. Bankruptcy Court for District of Nevada*, 828 F.2d 1385, 1388 & n. 9 (9th Cir. 1987) (taking judicial notice of "pleadings, orders and other papers on file in the underlying bankruptcy case").

Petitioner claims that the bad faith exception to the abstention doctrine should apply because his proceedings are not ongoing since they have been delayed for years without objection from the judge or district attorney. (Dkt. 68 at 10-11.) However, as discussed above, the delay in Petitioner's proceeding is entirely attributable to the defense. This is fatal to Petitioner's claim of bad faith. *United States v. Loud Hawk*, 474 U.S. 302, 314-15 (1986) (speedy trial claim rejected where delay was attributable to the defense); *see also Hakeem v. Beyer*, 990 F.2d 750, 764, 765 (3d Cir. 1993).

Petitioner also asserts that because his 2004 commitment was invalid, the 2006 proceeding lacks legal basis and therefore meets the extraordinary circumstances threshold. (Dkt. 68 at 11.) In support of this argument Petitioner cites *Ex parte Siebold*, 100 U.S. 371 (1879). (Dkt. 68 at 11.) But that case stated that a criminal judgment was invalid if the law under which it was obtained was unconstitutional. *Ex parte Siebold*, 100 U.S. at 376. Thus, *Siebold* does not help his position. As discussed above, Petitioner cannot challenge his 2004 commitment in this Court. Any infirmity of the 2004 commitment cannot constitute an extraordinary circumstance to rule on his claims, because even if this Court were to look at Petitioner's claims regarding that commitment, he would have no remedy.

In summary, abstention should apply for the same reasons found previously by the Northern District Court. Petitioner has not at this stage asserted any circumstance that would constitute an exception to that doctrine. The petition should be dismissed.[7]

---

[7] For the same reasons, the motion to amend should be denied.

# CONCLUSION

Respondent respectfully requests that the petition be dismissed and the motion to amend be denied.

Dated: August 17, 2016

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
BRIAN G. SMILEY
Supervising Deputy Attorney General

*/s/ Max Feinstat*
MAX FEINSTAT
Deputy Attorney General
*Attorneys for Respondent*

SA2016300813
32515626.doc

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  **Page v. King**
No.:        **1:16-cv-00522-JLT**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On <u>August 17, 2016</u>, I served the attached **MOTION TO DISMISS** by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

**Sammy L. Page**
**CO-000086-9**
**CSH - Coalinga State Hospital**
**Sammy L. Page**
**P.O. Box 5003**
**Coalinga, CA 93210-5003**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 17, 2016, at Sacramento, California.

|  Laurie Lozano  |  */s/ Laurie Lozano* |
| :---: | :---: |
| Declarant | Signature |

SA2016300813/32563905.doc