UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMMY L. PAGE,<br><br>             Petitioner,<br><br>       v.<br><br>AUDREY KING,<br><br>             Respondent. | Case No.: 1:16-cv-00522-AWI-JLT (HC)<br><br>FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS THE PETITION<br><br>[TWENTY-ONE DAY OBJECTION PERIOD] |

      Petitioner is currently confined as a Sexually Violent Predator awaiting trial for re-commitment. Petitioner was originally committed as an SVP in 2004 for a two-year commitment period. The State of California filed a petition to re-commit Petitioner for a second two-year period in 2006. However, after a change in California law, the prosecutor amended the petition to provide for an indefinite commitment. Over the subsequent ten years, the matter has been continued no less than twenty-eight times.

      Following remand from an appeal to the Ninth Circuit, this case was transferred to this Court by the Northern District after that court determined that it was not the custodial court. On April 21, 2016, the Court ordered Respondent to file a response to the original petition. On July 22, 2016, Petitioner filed a motion to amend the petition along with a pleading that the Court later construed as an amended petition. Respondent filed a motion to dismiss the petition on August 17, 2016. Petitioner filed an opposition on October 31, 2016.

# BACKGROUND

Petitioner's confinement history was set forth in Page v. King, C 13-5352 WHA (PR), 2015 WL 5569434, at *1–4 (N.D. Cal. Sept. 21, 2015), as follows:

### I. SVPA Commitment Proceedings

The SVPA authorizes the state to file a petition to civilly commit a person as a sexually violent predator ("SVP") if he (1) has been convicted of a sexually violent offense and (2) suffers from a diagnosed mental disorder that makes it likely that he will engage in sexually violent criminal behavior in the future. *See* Cal. Welf. & Inst. Code § 6600(a)(1). The commitment petition must be filed while the individual is still in custody under a determinate prison term, as a result of parole revocation, or under a special SVPA-authorized "hold." *Id*. § 6601(a)(2). After the petition is filed, the superior court must hold a probable cause hearing, and then a jury trial at which the state must prove beyond a reasonable doubt that the individual meets the criteria as an SVP. *Id*. §§ 6602-03. Originally, the SVPA provided for commitment for two-year terms, at the end of each the individual could be recommitted after a new trial for an additional two-year term. *See Orozco v. Superior Court*, 11 Cal.Rptr.3d 573, 578-79 (Cal. Ct. App. 2004). In November 2006, California passed Proposition 83, which extended the term of commitment or recommitment to an indeterminate period, thus obviating the need for a recommitment proceeding for any individual committed or re-committed after passage of the proposition. *Seeboth v. Allenby*, 789 F.3d 1099, 1101 (9th Cit. 2015) (citing cases).

### II. Petitioner's Commitment Proceedings

Petitioner has a history of convictions for sexual offenses dating back to the 1970s. He completed his sentence for the last of these convictions in 1997. Several months before his sentence was complete, however, prosecutors with the Alameda County District Attorney's Office filed a petition in the superior court to commit him under the SVPA. In 2004, he was tried on that petition, and a jury found him to be an SVP. Based on that finding, the superior court civilly committed him to a state mental health facility for a period of two years.

Petitioner appealed the judgment to the California Court of Appeal. In affirming, the California Court of Appeal summarized the three predicate offenses presented by the prosecution to prove that petitioner qualified for commitment under the SVPA. *See People v. Page*, 2005 WL 1492388 *3-5 (Cal. Ct. App. June 24, 2005). In 1971, petitioner was convicted of rape, second degree robbery and burglary of Antoinette B. He knocked on her door and asked to use her telephone, claiming to have been beaten. She allowed him in, and he used a pocket knife to hit her on the back and knock her down. He choked her until she "passed out," tore off her clothes, continued to hit her, and then he raped her. As he left, he took $40 from her purse.

The next predicate offense took place in 1977, when petitioner was convicted of rape, oral copulation, sodomy, second degree robbery, and burglary. At around 2:00 a.m., petitioner entered the home of Katherine B. He covered her head with a towel and began to choke her on the living room couch until she passed out. He pulled off her clothes and orally copulated her. For the next four or five hours, he alternately raped her and attempted to sodomize her. He also bit her breasts, and then he led her into the bedroom, where he repeatedly sodomized her or attempted sodomize her while she continued to complain of "extreme pain." While raping her, petitioner said, "Please don't make me angry and have to do something to you," and she tried to stay quiet and

limp because her two young daughters, ages seven and ten, were sleeping in a rear bedroom. Before leaving, petitioner stole a credit card and $16 from Katherine's purse. Katherine suffered abrasions and vaginal and rectal bleeding for four to five days.

The third predicate offense was for rape, second degree robbery, sodomy, and residential burglary in 1987. Petitioner entered the home of Leona L., who was fifty-nine years old, at around 1:30 a.m.. After a struggle, petitioner began choking her and forced her onto a couch, where he raped her. He told her, "Loosen up. Be nice to me. If you're not nice to me, I may kill you." He put a quilt over her head, and tried to sodomize her. She took a kitchen knife and threatened to stab petitioner, but he took it from her and poked her with it several times. He then sodomized her, and beat her further, knocking her dental bridge from her mouth. Leona suffered "excruciating anal and rectal pain that caused rectal bleeding," as well as back and leg pain for months. Before leaving, petitioner took six dollars from the kitchen table and three bottles of wine, and he said, "Okay, now you can call the police."

The prosecution also presented the opinions of two mental health professionals, Drs. Finnberg and Putman, that petitioner suffered from "paraphilia not otherwise specified [N.O.S.]," "sexual sadism" and antisocial personality disorder; that petitioner remained in the highest risk category of recidivism rate (52%) in the next 15 years; that an age-related decline in the likelihood that he would commit sexual offenses would not be expected; that he continued to be a danger to others; and that he remained an SVP. These evaluations were based in part on petitioner's aversion to mental health treatment at the state hospital where he was detained, his three predicate sex offenses, and a number of other incidents involving petitioner's sexually violent behavior against women.

Petitioner's appeal to the California Supreme Court was summarily denied.

While the commitment petition was pending, and before he was tried, petitioner filed a number of federal habeas petitions. These petitions were dismissed on various grounds, including two dismissed on abstention grounds under *Younger v. Harris*, 401 U.S. 37 (1971). *See, e.g., Page v. Lockyer*, No. C 03-2282 VRW (PR) (N.D. Cal., May 28, 2003); *Page v. Lockyer*, No. C 03-2364 VRW (PR) (N.D. Cal., June 6, 2003). Petitioner appealed from the latter of these dismissals, and the United States Court of Appeals affirmed. A subsequent pre-trial federal habeas petition, asserting the violation of the right to a speedy trial, was denied on its merits, *see Page v. Lockyer*, No. C 03-4797 VRW (PR) (N.D. Cal. May 26, 2005) (Order), and that decision was affirmed on appeal, *Page v. Lockyer*, 200 Fed. Appx. 727, 727-29 (9th Cir. 2009).

After petitioner was tried in state court and committed under the SVPA in 2004, he filed federal habeas petition challenging that commitment decision. *See Page v. Mayberg*, No. C 05-4141 VRW (PR) (N.D. Cal.). That petition was denied on its merits on April 5, 2007.

### III. Petitioner's Re-Commitment Proceedings

Before petitioner's two-year civil commitment term expired, prosecutors petitioned the Alameda County Superior Court to re-commit petitioner under the SVPA for another two-year term. In May 2006, following two continuances requested by petitioner's counsel, the superior court held a hearing and found probable cause. That determination relied on the same predicate offenses described above, as well as upon two new mental health evaluations, conducted by Drs. Coles and Hupka, in 2006 concluding that petitioner remained an SVP. The prosecutor amended the re-commitment petition in December 2006 to seek an indefinite (as opposed to two-year) re-commitment term

based on the recent changes to the SVPA under Proposition 83. Four new mental health evaluations were performed in 2012, two of which concluded that petitioner remained an SVP, and two of which did not, based upon his age.

Although the re-commitment petition was initially filed in February 2006 and amended in December 2006, and probable cause was found in May 2006, petitioner has still not been tried on the petition. Respondent was ordered to explain this lengthy delay, and has submitted a declaration by the prosecutor assigned to the case since 2009, as well as the state court records of the entire re-commitment proceedings since they began in March 2006 (Resp. Supp. Br. (Dkt. 27) Exhs. A, B). Respondent attempted to obtain a declaration from the attorney representing petitioner in the re-commitment proceedings, but counsel declined to provide one, citing the attorney-client privilege (*id*. Exh. C ¶¶ 3-4). Petitioner has submitted a responsive brief, but he does not dispute the explanation for the delay set forth in the state court records and the prosecutor's declaration.

The state court records and the prosecutor's declaration show that the parties have appeared over 40 times in court since the probable cause determination in May 2006, and each time the trial date has been put off, in most instances by petitioner (*id*. Exhs. A, B at ¶ 13). These records show an aggregate of approximately seven years of delay since the probable cause hearing were caused by petitioner or his attorney filing numerous motions, pro se petitions, requesting continuances, and waiving the setting of a trial date (*id*. Exh. B at ¶ 13m, r-v, z, aa, bb, dd-gg, ii-mm, oo-yy; Exh. A at 386, 410, 412, 416, 418, 420, 428, 430, 432, 436, 438, 440, 442, 446, 448, 450, 452, 454, 458, 460, 462, 464, 466, 468, 470, 472; Supp. Reply (dkt. 36) Ott. Decl. ¶ 2). In no instance has petitioner or his attorney requested that the trial date be set, and only one six-day continuance was requested by the State, in December 2006 (*id*. Exhs. A, B). The remainder of the delay, totaling approximately two years, is not explained by the state court minute orders or by the prosecutor's declaration because they precede the current prosecutor's assignment to the case in July 2009 (*ibid*.). Even this unexplained portion of the delay was likely caused by the defense, however, because the ordinary practice in these proceedings is to continue the setting of the trial date only at the request of the defense (*id*. Exh. B at ¶¶ 8-9). At the most recent hearing in his re-commitment proceeding, on August 7, 2015, the defense again requested that the case be continued again to January 18, 2016, for setting a trial date at that time (Supp. Reply (dkt. 36) Ott. Decl. ¶ 2). Petitioner does not dispute the foregoing explanation of the delay by the prosecutor and the state court records, nor does he offer any alternate explanation of his own.

Petitioner has challenged his ongoing re-commitment proceedings in a federal habeas petition before. *Page v. King*, No. C 12-3721 WHA (PR). That petition was dismissed without prejudice on abstention grounds because the trial on petitioner's re-commitment petition had not yet taken place. Petitioner appealed the judgment, and the United States Court of Appeals denied a certificate of appealability. Petitioner thereafter filed a motion for reconsideration in the district court, which was denied. When he appealed the denial of reconsideration, the Court of Appeals granted a certificate of appealability in which it ordered the parties to explain the delay in the 2006 re-commitment proceedings. That appeal is currently pending. *See Page v. King*, No. 13-17352 (9th Cir.).

Page v. King, No. C 13-5352 WHA (PR), 2015 WL 5569434, at *1–4 (N.D. Cal. Sept. 21, 2015)

## DISCUSSION

Petitioner challenges both his 2004 commitment and the 2006 recommitment proceedings. In

4

his initial petition, he claimed his 2004 commitment was based on a fraudulent, bad-faith evaluation and diagnosis. (Doc. No. 1 at 10-18.) He contends the commitment was based on fraudulent evidence and use of "fake mental disorders." (Doc. No. 1 at 20.) In his amended petition, Petitioner complains that the 2006 recommitment proceedings are void because the 2004 commitment was invalid and void. (Doc. No. 68 at 10-12.) He further contends that the proceedings under the SVP Act and regulations have no force or effect of law because they are invalid, unconstitutional, and not legally binding. (Doc. No. 68 at 16-17.) Last, he claims that the evaluations conducted in 2012 showed he was not an SVP and therefore he should be released. (Doc. No. 68 at 17-21.)

I.     Claims Concerning 2004 Proceedings

Respondent contends that Petitioner's challenges to the 2004 commitment are not cognizable because: 1) Petitioner is no longer in custody for the 2004 commitment; 2) The claims are successive; and 3) The petition is untimely. Respondent is correct.

The district court in Page addressed this issue as follows:

> Respondent argues that any federal claims challenging the 2004 judgment committing him under the SVPA must be brought under 28 U.S.C. 2254, not under 28 U.S.C. 2241. Section 2254 is the proper basis for a habeas petition brought by "a person in custody pursuant to the judgment of a State court." Petitioner is not presently in custody under a state court judgment. The only civil commitment judgment against him is from 2004, which imposed a two-year commitment term that expired long ago. Since the expiration of that term in 2006, petitioner has been held pursuant to the state court's determination of probable cause on the re-commitment petition. As he is still awaiting trial on that petition, there is no state court judgment holding petitioner in custody. The proper basis for a habeas petition by a petitioner in custody who is not held "pursuant to the judgment of a State court," *ibid.*, for instance a pre-trial detainee, is 28 U.S.C. 2241, not 28 U.S.C. 2254. *See McNeely v. Blanas*, 336 F.3d 822, 824 n.1 (9th Cir. 2003). As petitioner is not in custody pursuant to the judgment of a state court, but rather is a detainee awaiting trial on the re-commitment petition, the instant federal petition falls under Section 2241, not Section 2254.
>
> Respondent argues that even if the instant petition falls under Section 2241, it may not challenge the 2004 judgment because he is no longer in custody on that judgment. There is no federal jurisdiction over a federal habeas petition, under either Section 2241 or 2254, if the petitioner is not in custody pursuant to the judgment being challenged in the petition. *Maleng v. Cook,* 490 U.S. 488, 490-91 (1989). As petitioner is not in custody pursuant to the 2004 judgment, whose commitment term has expired, he may not challenge his 2004 judgment in a federal habeas petition. To the extent his claims challenge that judgment, therefore, they are dismissed. In light of this conclusion, respondent's alternative grounds for dismissing claims against the 2004 judgment, such as that they are successive or untimely, need not be considered.

Page v. King, No. 2015 WL 5569434, at *4.

This Court agrees with the above analysis. Petitioner is not in custody for the 2004 commitment; therefore, his claim is not cognizable. Since the claim should be dismissed as noncognizable, the Court need not address the alternative grounds for dismissal.

## II. Absention

As to Petitioner's claims concerning the 2006 recommitment proceedings, the Court agrees with Respondent and the District Court for the Northern District of California in its October 25, 2012, order of dismissal, that the Court should abstain from interfering in the state recommitment proceedings. The Northern District stated the following:

> Under the principles of comity and federalism cited in *Younger*, a federal court should not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief absent extraordinary circumstances. *See Younger*, 401 U.S. at 43-54. Interference is appropriate only upon a showing of the state's bad faith or harassment, or a showing that the statute challenged is "flagrantly and patently violative of express constitutional prohibitions." *Id*. at 53-54 (cost, anxiety and inconvenience of criminal defense not kind of special circumstances or irreparable harm that would justify federal court intervention; statute must be unconstitutional in every "clause, sentence and paragraph, and in whatever manner" it is applied); *Carden v Montana*, 626 F2d 82, 84 (9th Cir 1980) (only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other special circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate). The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*., 457 U.S. 423, 432 (1982). *Younger* applies to the pending SVPA re-commitment proceedings against petitioner: the proceedings are judicial in nature, involve important state interests and afford petitioner an adequate opportunity to raise constitutional issues. *See ibid*.
>
> There is no indication that *Younger* abstention is not appropriate because SVPA, as applied to him or on its faith, is "flagrantly and patently violative of his constitutional rights." Indeed, the dismissals of his prior petitions on *Younger* grounds and subsequent affirmances on appeal indicate that it is appropriate to apply *Younger* to him. Moreover, as noted in connection with his prior cases, SVPA has in fact withstood constitutionally scrutiny in the Supreme Court of California, *see Hubbart v. Superior Court*, 19 Cal. 4th 1130 (1999), and similar laws from other states have withstood constitutional scrutiny in the Supreme Court of the United States, *see Kansas v. Hendricks*, 521 U.S. 346 (1997); *Seling v. Young*, 531 U.S. 250 (2001). Nor does petitioner show bad faith or harassment. Under the rationale of *Younger*, the petition must be dismissed without prejudice to refiling after SVPA re-commitment proceedings challenged herein, including appeal, are completed.

(Doc. No. 18.)

This ruling by the Northern District was reversed and remanded by the Ninth Circuit on the basis of lack of jurisdiction. On remand, the Northern District determined it did not have jurisdiction and thus transferred the case to the Eastern District. However, as correctly argued by Respondent,

1    there is nothing concerning Petitioner's custody status that has changed.  As found by the Northern
2    District, the substantial delay in recommitment proceedings was caused by the defense, and any claim
3    of bad faith by the prosecution or the state court is meritless.  There is no valid reason for the Court to
4    intervene in the ongoing state proceedings.  Therefore, the Court should abstain pursuant to Younger,
5    and the petition should be dismissed.

## RECOMMENDATION

Accordingly, the Court **RECOMMENDS** that the petition be dismissed, and all pending motions be dismissed as moot.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **November 21, 2016**                        **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE