1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11  SAMMY L. PAGE,                          )  Case No.: 1:16-cv-00522-AWI-JLT (HC)
                                            )
12          Petitioner,                     )  FINDINGS AND RECOMMENDATION TO
                                            )  DENY PETITIONER'S MOTION FOR LEAVE
13      v.                                  )  TO AMEND, DENY AS MOOT PETITIONER'S
                                            )  MOTION REGARDING EXHAUSTION, AND
14  AUDREY KING,                            )  GRANT IN PART RESPONDENT'S MOTION TO
                                            )  DISMISS; ORDER DENYING REQUEST FOR
15          Respondent.                     )  SUPPLEMENTAL BRIEFING
                                            )  (Docs. 123, 125, 127, 139, 146)
16                                          )

17          Petitioner is currently confined as a Sexually Violent Predator awaiting trial for recommitment

18  under the California Sexually Violent Predator Act, Cal. Welf. & Inst. Code § 6600 *et seq*. Petitioner

19  was originally committed as an SVP in 2004 for a two-year commitment period. The State of

20  California filed a petition to re-commit Petitioner for a second two-year period in 2006. After a change

21  in California law, the prosecutor amended the petition to provide for an indefinite commitment.

22  Petitioner filed a petition for habeas corpus, alleging that the state is violating his Fourteenth

23  Amendment due process rights by continuing to detain him pretrial based on an outdated and

24  scientifically invalid probable cause finding. This Court dismissed the petition according to the

25  abstention doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971). The Ninth Circuit Court of

26  Appeals vacated and remanded the matter for further proceedings.

27          Before the Court is Petitioner's motion for leave to file a second amended petition, Petitioner's

28  motion to declare state court exhaustion of Fourth Amendment claim to be unnecessary or excused, or

                                            1

1    to stay and abey the instant proceedings pending exhaustion, and Respondent's motion to dismiss the

2    first amended petition.[1] (Docs. 125, 127, 139.) For the following reasons, the Court recommends that

3    Petitioner's motion for leave to amend be denied, Petitioner's motion regarding exhaustion be denied

4    as moot and Respondent's motion to dismiss be granted.

5                                               **BACKGROUND**

6        The Ninth Circuit set forth the relevant factual and procedural history as follows:

7    **A. Page's State SVPA Proceedings**

8        From 1971 to 1987, Page committed three brutal rapes during home invasion
         robberies. *See People v. Page*, 2005 Cal. App. Unpub. LEXIS 5503, 2005 WL
9        1492388, at *3-5 (Cal. Ct. App. June 24, 2005). In 2004, he was adjudicated a
         Sexually Violent Predator ("SVP") under the SVPA and civilly committed for two
10       years. 2005 Cal. App. Unpub. LEXIS 5503, [WL] at *1-3.

11       In February 2006, the state filed a petition to recommit Page as an SVP. The state
         supported its petition with two psychiatric evaluations diagnosing Page with Paraphilia
12       Not Otherwise Specified ("NOS") based on his affinity for nonconsensual sex and
         concluding that he qualified as an SVP. In May 2006, the state court found probable
13       cause to detain Page pretrial. Page has been detained awaiting trial ever since. The
         state court minute orders and the July 21, 2015 declaration of David C. Cook, an
14       SVPA prosecutor, set forth the relevant timeline. . . .

15       On March 16, 2006, a public defender was appointed to represent Page. The case was
         continued until December 15, 2006 to permit the parties to prepare for trial. On
16       December 15, the state filed a motion based on a recent amendment to the SVPA. The
         court granted the motion and continued the case to March 2, 2007.

17
         The case was repeatedly delayed over the next two years. Defense counsel requested
18       one continuance, but no explanation for the other continuances appears in the record.
         The case then was continued throughout 2009 to permit the parties to litigate defense
19       motions, including Page's motion for substitute counsel. On March 12, 2010, Cook
         "informed the court and Page's counsel that [the state] was ready for the case to be set
20       for trial." The case nonetheless was continued to May 2012 so that two
         additional defense motions could be briefed and decided.

21
         One of the defense motions sought a new probable cause hearing, new mental health
22       evaluations, and new mental health evaluators. In a supporting declaration, Dr. Allen
         Francis opined that "Paraphilia NOS, nonconsent" is an "incompetent" and
23       "psychiatrically unjustified" diagnosis upon which the psychiatric community had
         recently cast doubt, most notably by rejecting proposals to include it in the American
24       Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth
         Edition, or "DSM-V." The court granted the motion for new evaluations and a new
25       probable cause hearing, and continued the case to November 2012 to allow the new
         evaluations to take place.

26
         Four mental health professionals were retained to perform the new evaluations. The
27

28   ---
     [1] On January 30, 2020, Petitioner filed an unopposed motion to excuse one-day lateness in filing of Petitioner's papers
     (Doc. 123), which is **GRANTED**.

                                                        2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

first two evaluators disagreed as to whether Page met SVP criteria, necessitating two additional evaluators, who also disagreed. In the end, two evaluators, including one that had recommended recommitment in 2006, concluded that Page no longer met SVP criteria. They based their determinations in part on Page's lengthy pretrial detention, reasoning that he had aged and had not committed any further sexual or violent acts. The two other evaluators came to the opposite conclusion, finding that Page continued to meet SVP criteria. One of those evaluators diagnosed Page with Paraphilia NOS.

The case was continued from November 2012 to May 2013 so that defense motions related to the new evaluations could be filed, briefed, and decided. On July 26, 2013, the state requested a continuance to file a motion based on *Reilly v. Superior Court*, 57 Cal. 4th 641, 160 Cal. Rptr. 3d 410, 304 P.3d 1071 (Cal. 2013), which called into question Page's entitlement to a new probable cause hearing. Defense counsel then sought several continuances to respond to the state's *Reilly* motion. The court granted the *Reilly* motion on April 18, 2014 and rescinded its prior order calling for a new probable cause determination.

The case was repeatedly continued until June 2, 2017 to allow defense counsel to litigate additional motions. The minute orders from July 28, 2017 through November 3, 2017 reference a "motion" but provide no further detail. The case was continued on January 5, 2018 "[b]y agreement of counsel" and again on May 4, 2018 for unknown reasons.

Cook averred in his declaration that he "remain[s] ready to set this matter for trial" and that, to his knowledge, "neither Page nor his trial counsel has ever requested that Page's case be set for trial." Cook further averred that he requested only one continuance after calling ready for trial on March 12, 2010.

**B. Page's Federal Habeas Proceedings**

Page filed the present federal habeas petition in the Northern District of California on July 16, 2012. He alleged that his due process rights were violated by the state court when it based its pretrial detention probable cause finding on pseudoscience; by the prosecution when it introduced pseudoscientific evidence at the probable cause hearing; and by the state when it continued to detain him based on the 2006 probable cause finding even though the 2012 evaluations suggested that the 2006 evaluations had become outdated. The district court abstained under *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). *See Page v. King*, 2015 U.S. Dist. LEXIS 126069, 2015 WL 5569434 (N.D. Cal. Sept. 21, 2015). We vacated and remanded, instructing the district court to consider whether it had jurisdiction to decide the petition.

On remand, the district court transferred the case to the Eastern District of California, which again abstained under *Younger*, dismissed Page's petition, and declined to issue a certificate of appealability. *See Page v. King*, 2017 U.S. Dist. LEXIS 223275, 2017 WL 11373232 (E.D. Cal. Feb. 24, 2017). Page appealed. We granted a certificate of appealability on the issue whether the district court properly abstained under *Younger*.

Page v. King, 932 F.3d 898, 900-01 (9th Cir. 2019).

The Ninth Circuit reversed, holding that this Court erred in abstaining under Younger. Page v. King, 932 F.3d 898 (9th Cir. 2019). After remand and appointment of counsel, the Court ordered

3

1    parties to brief Petitioner's due process claim. (Doc. 110.) Petitioner's counsel filed a post-remand

2    brief on the due process claim (Doc. 124), a motion for leave to file a second amended petition (Doc.

3    125), and a motion to declare state court exhaustion of Fourth Amendment claim to be unnecessary or

4    excused, or to stay and abey the instant proceedings pending exhaustion (Doc. 127). Respondent

5    opposed the motions and filed a motion to dismiss the first amended petition (Docs. 139, 140.)

6    Petitioner filed an opposition to Respondent's motion to dismiss (Doc. 141) to which Respondent filed

7    a reply (Doc. 142). Petitioner filed a reply to the opposition to the motions to amend and to declare

8    exhaustion unnecessary. (Doc. 143.) Petitioner also filed a reply to Respondent's post-remand

9    briefing. (Doc. 144.)

10                                               **DISCUSSION**

11   A.      Motion for Leave to Amend

12           Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within

13   21 days of service, or if the pleading is one to which a response is required, 21 days after service of a

14   motion under Rule 12(b), (e), or (f). "In all other cases, a party may amend its pleading only with the

15   opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

16           Granting or denying leave to amend a complaint is in the discretion of the Court, Swanson v.

17   United States Forest Service, 87 F.3d 339, 343 (9th Cir. 1996), though leave should be "freely give[n]

18   when justice so requires." Fed. R. Civ. P. 15(a)(2). "In exercising this discretion, a court must be

19   guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the

20   pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). Consequently,

21   the policy to grant leave to amend is applied with extreme liberality. Id.

22           There is no abuse of discretion "in denying a motion to amend where the movant presents no

23   new facts but only new theories and provides no satisfactory explanation for his failure to fully

24   develop his contentions originally." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995); see also

25   Allen v. City of Beverly Hills, 911 F.2d 367, 374 (9th Cir. 1990). After a defendant files an answer,

26   leave to amend should not be granted where "amendment would cause prejudice to the opposing party,

27   is sought in bad faith, is futile, or creates undue delay." Madeja v. Olympic Packers, 310 F.3d 628, 636

28

                                                       4

1  (9th Cir. 2002) (citing Yakama Indian Nation v. Washington Dep't of Revenue, 176 F.3d 1241, 1246

2  (9th Cir. 1999)).

3          In the motion for leave to file a second amended petition filed on January 30, 2020, Petitioner

4  requests leave to amend the first amended petition to present his petition as being grounded in the

5  Fourth Amendment, as an alternative to the pending Fourteenth Amendment ground. (Doc. 125.) The

6  operative pleading is the first amended petition, which alleges violation of Petitioner's due process

7  rights under the Fourteenth Amendment. (Doc. 80.) Petitioner argues that he has been diligent and no

8  party will be prejudiced by the proposed amendment. (Doc. 125 at 5-8.) Petitioner states that the only

9  new claim added to the proposed petition is the Fourth Amendment claim. (Doc. 125 at 6.) Petitioner

10  also argues that the proposed amendment presents "nothing additional in the way of evidence or

11  discovery." (Doc. 125 at 8.) Petitioner notes that Respondent has not yet filed an answer and contends

12  that Respondent would not be prejudiced by allowing Petitioner to file the proposed second amended

13  petition. (Doc. 125 at 5, 8.)

14          Petitioner argues that justice requires that Petitioner be permitted to amend his petition to

15  include the Fourth Amendment claim to ensure cognizability of his constitutional challenge to the

16  continued detention based on invalid probable cause. (Doc. 125 at 8.) Specifically, Petitioner alleges

17  that the law is unsettled whether Petitioner's claim would fall under the Fourth Amendment, the

18  Fourteenth Amendment or both, and the proposed amendment would facilitate decision on the merits,

19  rather than on the pleadings or technicalities. (Doc. 125 at 8.)

20          Respondent argues that amendment would be futile for several reasons. (Doc. 140 at 7-14.)

21  First, Respondent contends that Petitioner's claim that his diagnosis of paraphilia NOS is not

22  medically valid does not state a federal theory for relief. (Doc. 140 at 7-9.) Respondent argues, "how

23  California defines a mental disorder is a matter of state law, and does not raise a constitutional claim."

24  (Doc. 140 at 8.) The Court agrees that federal habeas relief is not available to state prisoners

25  challenging state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that

26  federal habeas corpus relief does not lie for errors of state law"); Langford v. Day, 110 F.3d 1380,

27  1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal

28  habeas corpus" proceedings).

5

The United States District Court for the Northern District of California previously addressed this issue, finding that this claim lacks merit as well:

> The federal constitutional right to due process does not require civil commitment of an SVP to be based upon a uniformly recognized mental health disorder. States may, in defining who may be civilly committed, employ mental health categories that "do not fit precisely with the definitions employed by the medical community." *Hendricks*, 521 U.S. at 359. The scientific debate over paraphilia NOS, non-consent, including its exclusion from the DSM, does not mean that the diagnosis is "too imprecise a category" such that commitment of individual as an SVP based on such a diagnosis [r]uns afoul of due process. *McGee v. Bartow*, 593 F.3d 556, 570, 581 (7th Cir. 2010) (citing *Hendricks*, 521 U.S. at 373) ("we cannot conclude that the diagnosis of a rape-related paraphilia [i.e. paraphilia NOS] is so empty of scientific pedigree or so near-universal in its rejection by the mental health profession that civil commitment cannot be upheld as constitutional when this diagnosis serves as a predicate"); *see also People v. Johnson*, 235 Cal. App. 4th 80, 185 Cal. Rptr. 3d 135, 142-43 (Cal. Ct. App. 2015) ("Even if the latest edition of the DSM "reflects a growing skepticism in the psychiatric community about paraphilic coercive disorder, we cannot conclude that a commitment based on that disorder violates due process" ). Even California does not define an SVP in lock-step with mental disorders recognized by the DSM. The assessment of an SVP is based upon "diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders, including criminal and psychosexual history, type degree, and duration of sexual deviance, and severity of mental disorder." *Reilly*, 57 Cal. 4th at 647 (quoting California Welfare and Institutions Code Section 6601(c)) (internal quotations omitted). For the persuasive reasons discussed in *McGee* and *Johnson*, the existence of a disagreement between the doctors who found petitioner to be an SVP on the one hand, and Dr. Frances and the DSM on the other, does not render petitioner's commitment violative of due process.

Page v. King, No. C 13-5352 WHA (PR), 2015 U.S. Dist. LEXIS 126069, at *23-25 (N.D. Cal. Sep. 18, 2015)

Second, Respondent argues that "even if Petitioner successfully showed that paraphilia NOS diagnosis could not form the basis of the probable cause holding, there would still be probable cause based on the anti-social personality disorder diagnosis." (Doc. 140 at 9.) Notably, both evaluators in 2006 also diagnosed Petitioner with anti-social personality disorder. (Doc. 140 at 9.) In Hubbart v. Superior Court, 19 Cal. 4th 1138 (Cal. 1999), the California Supreme Court rejected the appellant's request to strike down the SVPA because it does not expressly exclude antisocial personality disorders or other conditions characterized by an inability to control violent behavior, such as paraphilia, from being categorized as a "diagnosable mental disorder." In so ruling, the court necessarily found that these conditions can be mental disorders under the SVPA if coupled with a finding of current dangerousness. Likewise, in an unpublished opinion, the California Court of Appeals rejected the

1   contention that an antisocial personality disorder diagnosis cannot provide the basis of an SVPA

2   commitment. People v. Swain, 2010 WL 717687, at *3 (Cal. Ct. App. Mar. 3, 2010). In Swain, the

3   court held, "We have found no authority to support Swain's position that an antisocial personality

4   disorder alone cannot form the basis of an SVP commitment where, like here, the jury makes the

5   required finding that the disorder makes him a danger to the public because, as a result of the disorder,

6   it is likely that he will engage in sexually violent predatory conduct." In rejecting that anti-social

7   personality disorder cannot, standing alone, be a "qualifying mental disorder" for purposes of the

8   SVPA, the Court held, "An instruction that antisocial personality disorder is never a qualifying mental

9   disorder under the statutory definition is an incorrect statement of the law and would properly have

10   been refused if requested." Id. at *3.  See also Rainwater v. King, 2017 WL 6040425, at *9, n. 2 (E.D.

11   Cal. Dec. 6, 2017); Leonard v. King, 2014 WL 7239453, at *8, n. 6 (E.D. Cal. Dec. 17, 2014).[2]

12          At the hearing, petitioner's attorney observed that People v. Krebs, 8 Cal.5th 265, 325 (2019)

13   informs this topic.  The Court disagrees. Krebs merely considered whether a psychiatrist's testimony

14   about the volitional nature of a certain form of paraphilia squared with the requirements of the SVP

15   Act. Id. at 323-327. At the urging of the petitioner, the court evaluated whether the doctor's testimony

16   was false. Id. at 323-324.  In finding that the doctor did  not testify falsely, the Court relied on Ake v.

17   Oklahoma (1985) 470 U.S. 68, 81 for the proposition that "Psychiatry is not ... an exact science, and

18   psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate

19   diagnosis to be attached to given behavior and symptoms, on cure and treatment, and on likelihood of

20   future dangerousness. Perhaps because there often is no single, accurate psychiatric conclusion ...,

21   juries remain the primary factfinders [and] ... must resolve differences in opinion within the

22

23   _____

24   [2] When questioned about Mr. Page's position on this argument, counsel stated that she didn't note this second diagnosis as an issue in this case and admitted that none of Mr. Page's briefs countered this argument. Indeed, Petitioner has ignored this second diagnosis throughout his various habeas proceedings. Despite recognizing this second diagnosis in the post-

25   remand brief (Doc. 124 at 5), petitioner did not address its import though his counsel conceded at the hearing that if probable cause exists based upon this second diagnosis, the entire petition fails.

26          In addition to petitioner recognizing this second diagnosis in the post-remand brief, the issue was raised squarely by the respondent in opposition to the motion to amend (Doc. 140 at 9) and in the motion to dismiss; Doc. 139 at 15, 17).

27   Apparently, petitioner made a tactical decision to focus his efforts on other topics (See Doc. 146 [offering no explanation for the failure to address the issue), and the Court cannot question these tactics. Nevertheless, in this remanded action, he

28   has had three briefing opportunities to address the issue; that is enough. Thus, petitioner's request to file another brief (Doc. 146) is **DENIED**.

1    psychiatric profession on the basis of the evidence offered by each party."

2         Third, Respondent argues that Petitioner's fraud claim fails to state a colorable claim. (Doc.

3    140 at 9.) Petitioner argues that "state officials knew that a diagnosis of 'Paraphilia NOS, nonconsent'

4    lacks scientific reliability, but sought his commitment and recommitment based on the false evidence

5    that Paraphilia NOS qualifies as a diagnosed mental disorder required under the SVPA." (Doc. 125-1

6    at 22.) Respondent contends that Petitioner fails to provide evidence showing that state officials knew

7    in 2006 about the unreliability of a paraphilia NOS diagnosis. (Doc. 140 at 9.) Petitioner cites to a

8    notice issued by the California Department of Health in 2011 and Petitioner's updated evaluations

9    conducted in 2012 (Doc. 125-1 at 22-23), and Respondent correctly alleges that none of these

10   documents have any bearing on what the government knew in 2006.[3] (Doc. 140 at 9.)

11        Fourth, Respondent argues that Petitioner's "stale evaluations claim" is meritless.[4] (Doc. 140 at

12   9-12.) As discussed further below, the Northern District previously reviewed this issue noting first that

13   any violation of the SVPA is a state law violation that is not grounds for federal habeas relief. See

14   Estelle, 502 U.S. at 67-68; Page v. King, 2015 U.S. Dist. LEXIS 126069, at *30. Even assuming that

15   Petitioner had a constitutionally protected liberty interest arising from the SVPA provisions requiring

16   two concurring expert opinions, the Northern District found that there was no violation of those

17   provisions. See Page v. King, 2015 U.S. Dist. LEXIS 126069, at *30-31. The Court agrees with and

18   adopts this rationale. Accordingly, because no violation of California law occurred, Petitioner fails to

19   demonstrate that he was denied his due process rights by a violation of state law.

20        Fifth, Respondent contends that Petitioner's sufficiency of the evidence claim is meritless.

21   (Doc. 140 at 12-13.) Respondent notes that Petitioner does not argue that the admitted evidence was

22   insufficient, but that the psychiatric reports should not have been admitted because they were hearsay

23   and violated Petitioner's confrontation rights. (Doc. 140 at 12; see Doc. 125-1 at 26.) Respondent

24   alleges that regardless of whether the claim is construed as a sufficiency of the evidence claim or a

25

26   ───────────────

27   [3] Even if it did, petitioner fails to show that the failure to follow the policy necessarily violates the state law. Even if the
     Court believes that it *does* violate state law, this does not present federal habeas jurisdiction. Estelle, 502 U.S. at 67-68.
     [4] As noted by Respondent, Respondent's arguments in opposition to the motion to amend largely duplicate arguments

28   presented in the motion to dismiss, arguing that the claims are meritless. (Doc. 139 at 7, n.1.; Doc. 140 at 6, n.1.) The Court
     will address the same arguments only once.

1  confrontation claim, Petitioner does not present a colorable theory for relief. (Doc. 140 at 12-13.)

2      The law on sufficiency of the evidence is clearly established by the United States Supreme

3  Court.  In Jackson v. Virginia, 443 U.S. 307 (1979), the Court announced that on habeas review, the

4  court must determine "whether, after viewing the evidence in the light most favorable to the

5  prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

6  reasonable doubt."  Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

7  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will

8  a petitioner be entitled to habeas relief.  Jackson, 443 U.S. at 324.  Sufficiency claims are judged by

9  the elements defined by state law.  Id. at 324, n. 16.

10     If confronted by a record that supports conflicting inferences, a federal habeas court "must

11  presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such

12  conflicts in favor of the prosecution, and must defer to that resolution."  Id. at 326.  Circumstantial

13  evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  Walters

14  v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

15     After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson

16  with an additional layer of deference.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In

17  applying the AEDPA's deferential standard of review, this Court must presume the correctness of the

18  state court's factual findings.  28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

19     In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the

20  highly deferential standard of review in habeas proceedings, by noting that Jackson,

21      makes clear that it is the responsibility of the jury - not the court - to decide what
        conclusions should be drawn from evidence admitted at trial. A reviewing court
22      may set aside the jury's verdict on the ground of insufficient evidence only if no
        rational trier of fact could have agreed with the jury. What is more, a federal court
23      may not overturn a state court decision rejecting a sufficiency of the evidence
        challenge simply because the federal court disagrees with the state court. The
24      federal court instead may do so only if the state court decision was "objectively
        unreasonable."
25
        Because rational people can sometimes disagree, the inevitable consequence of this
26      settled law is that judges will sometimes encounter convictions that they believe to
        be mistaken, but that they must nonetheless uphold.

27

28

1   Id. at 2. Though Petitioner states it as a sufficiency of the evidence claim, he fails to set forth facts

2   sufficient to support such a claim.

3          Furthermore, the Sixth Amendment's Confrontation Clause provides that "[i]n all criminal

4   prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ."

5   U.S. Const., Amend. VI.  The Confrontation Clause bars "admission of testimonial statements of a

6   witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a

7   prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53–54 (2004); Davis

8   v. Washington, 547 U.S. 813, 821 (2006).  The Confrontation Clause applies only to "'witnesses'

9   against the accused, i.e., those who 'bear testimony.'" Crawford, 541 U.S. at 51 (citation omitted);

10  Davis, 547 U.S. at 823–24. "'Testimony,' in turn, is typically a solemn declaration or affirmation

11  made for the purpose of establishing or proving some fact." Crawford, 541 U.S. at 51 (citation and

12  some internal punctuation omitted); Davis, 547 U.S. at 824.  Nevertheless, the Confrontation Clause

13  "does not bar the use of testimonial statements for purposes other than establishing the truth of the

14  matter asserted." Crawford, 541 U.S. at 59 n. 9. Additionally, a Confrontation Clause violation is

15  subject to harmless error analysis.  Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).  A

16  Confrontation Clause violation is harmless and does not justify habeas relief, unless it had substantial

17  and injurious effect or influence in determining the jury's verdict.  Brecht v. Abrahamson, 507 U.S.

18  619, 623 (1993).

19         The "fact that a proceeding will result in loss of liberty does not *ipso facto* mean that the

20  proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment." Middendorf v. Henry,

21  425 U.S. 25, 37 (1976). Involuntary civil commitment "constitutes a significant deprivation of liberty

22  that requires due process protection" (Addington v. Texas, 441 U.S. 418, 425 (1979)), but the Sixth

23  Amendment right to confrontation does not attach in civil commitment proceedings. Cf. United States

24  v. Sahhar, 917 F.2d 1197, 1205-06 (9th Cir. 1990) ("Federal commitment serves a regulatory, rather

25  than punitive, purpose and section 4246 [permitting civil commitment of mentally incompetent

26  prisoners due for release] need not incorporate the right to a jury trial."). Indeed, "the procedures

27  required for a civil commitment are not nearly as rigorous as those for criminal trials, or even juvenile

28  proceedings." Id. at 1206 (internal citations omitted). The Court therefore rejects Petitioner's argument

1    that his Sixth Amendment rights were violated by his 2006 probable cause finding. See Gerstein v.

2    Pugh, 420 U.S. 103, 121-22 (1975). Accordingly, regardless of whether the claim is construed as a

3    sufficiency of evidence claim or confrontation clause claim, Petitioner does not present a colorable

4    claim for relief.

5         Respondent further contends that Petitioner cannot challenge his pre-commitment detainment

6    on federal due process grounds (Doc. 140 at 13-14), and he cannot transform his state law claims into

7    federal claims by invoking the Fourth Amendment. (Doc. 140 at 14.) As discussed more fully below in

8    granting Respondent's motion to dismiss in part, Petitioner's challenge is appropriate under the Fourth

9    Amendment and not the due process clause.

10        Accordingly, it appears that amendment would be futile as Respondent argues. Because the

11   claims in the proposed second amended petition fail to invoke federal habeas jurisdiction because they

12   raise only issues of state law, the Court recommends denying Petitioner's motion for leave to amend.

13   B.       Motion to Declare Exhaustion Unnecessary, or Alternatively, Stay and Abey the Proceedings

14        Petitioner contends that exhaustion of his Fourth Amendment claim is unnecessary or should

15   be excused, based on the same extraordinary circumstances on which the Ninth Circuit found

16   Petitioner's factual circumstances o fall within the irreparable harm exception to Younger abstention.

17   (Doc. 127 at 5.) Specifically, the Ninth Circuit held that the irreparable harm posed by Petitioner's

18   circumstances are precisely what calls for an exception from the usual deference to comity, and

19   Petitioner argues that the same rationale applies to exhaustion. (Doc. 127 at 6.) Alternatively,

20   Petitioner argues that if Petitioner is required to exhaust this ground in state court, he should be

21   granted a stay and abeyance of the instant federal proceedings to allow time to do so. (Doc. 127 at 6.)

22        Respondent argues that "the Ninth Circuit's finding of an exception to abstention does not

23   constitute an exception to exhaustion." (Doc. 140 at 15.) Respondent contends that the Ninth Circuit

24   did not hold that Petitioner lacked an effective state court venue to raise his claims. (Doc. 140 at 15.)

25   To the contrary, Respondent argues, Petitioner has filed and received rulings on multiple state habeas

26   petitions during his pre-commitment confinement. (Doc. 140 at 15.) Additionally, Respondent argues

27   that "all of Petitioner's claims require the resolution of state law issues, and therefore both judicial

28   economy and comity would be served by having Petitioner first fairly present his claims to the state

1    court." (Doc. 140 at 15.) The Court agrees.  However, because the Court denies Petitioner's motion to

2    amend, the Court recommends that Petitioner's motion to declare state court exhaustion of Fourth

3    Amendment claim to be unnecessary or excused be denied as moot.

4    C.       Motion to Dismiss

5           In the motion to dismiss, Respondent argues that (1) abstention applies to the relief Petitioner

6    requests, (2) the claims are unexhausted, and (3) the claims fail to state a cognizable federal claim.

7           Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition

8    if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to

9    relief in the district court. . ." Rule 4 of the Rules Governing Section 2254 Cases.

10          The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if

11   the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's

12   procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to

13   evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d

14   599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state

15   procedural default).  Thus, a respondent can file a motion to dismiss after the court orders a response,

16   and the court should use Rule 4 standards to review the motion.

17   1.       Failure to state a cognizable federal claim

18          Respondent makes several arguments in the motion to dismiss that the claims in the first

19   amended petition and post-remand brief fail to state a federal claim for relief. (Doc. 139 at 10-19.)

20          a.       Claims in the first amended petition[5]

21          Respondent contends that Petitioner's claim that the 2006 commitment proceeding is invalid

22   because the regulations governing his evaluations were "invalid" fails to state a federal theory for

23   relief. (Doc. 139 at 10-12.) As stated above, federal habeas relief is not available to state prisoners

24   challenging state law. Estelle, 502 U.S. 62 at 68 (1991); Gilmore v. Taylor, 508 U.S. 333, 348-49

25   (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a

26   constitutional violation, may not be corrected on federal habeas"). The Northern District previously

27

28
_____
[5] Fn. 1.

12

1   rejected a similar claim, noting that Petitioner's contentions were only matters of state law and lacked

2   merit:

> Petitioner's claim boils down to two arguments. First, the mental health evaluations are "invalid" under Welfare and Institutions Code Section 6601(a)(1) because they were performed in 2004-2006, when he was no longer a prisoner. This is a claim for the violation of state law that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Petitioner asserts that this violated his right to due process, but he cannot "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). The argument does not appear to have any merit in any event. Section 6601(a)(1) requires the state to refer anyone in prison who may be an SVP for an "initial screening" six months before they are released. *See Reilly v. Superior Court*, 57 Cal.4th 641, 646, 160 Cal. Rptr. 3d 410, 304 P.3d 1071 (2013) (citing Sections 6601(a)(1),(b)). This does not mean that any future mental health evaluations conducted by the state to determine whether the subject is in fact and remains an SVP are "invalid." *See id.* at 646-47 (describing subsequent "full" evaluations and re-evaluations authorized by SVPA).
>
> The second argument is that his commitment violates due process because in 2008, California's Office of Administrative Law ("OAL") determined that the protocol used in 2007 to assess whether a subject is an SVP was procedurally invalid as an "underground regulation." Petitioner's "underground regulation" argument is based on his assertion that the state officials did not comply with the California Administrative Procedures Act. *See Reilly*, 57 Cal.4th at 648-49. As such, the asserted error is a state law error that may not be the basis of federal habeas relief. *Estelle*, 502 U.S. at 67-68. In any event, the OAL determination concerned the 2007 protocol, *see Reilly*, 57 Cal.4th at 648-50, whereas the mental health evaluations challenged here were conducted earlier, in 2004-2006, pursuant to a different protocol. Moreover, the state courts have determined that any error that occurred under the invalid 2007 protocol would have to be "material" to warrant dismissal, *see id.* at 646, a showing that petitioner does not attempt to make here. Accordingly, petitioner has not shown that his mental health evaluations were invalid or violated his right to due process.

19   Page v. King, 2015 U.S. Dist. LEXIS 126069, at *19-21. Accordingly, Petitioner's argument that the

20   evaluations were based on an "invalid" regulation is an interpretation of state law and lacks merit.

21   Respondent next contends that Petitioner's claim that he must be released because his 2006

22   evaluations are "stale" does not state a federal claim for relief. (Doc. 139 at 12-15.) The gist of

23   Petitioner's argument is that in 2012, he could no longer be deemed SVP under Sections 6601(d)-(f)

24   because two experts no longer agreed that he remained an SVP. The Northern District also previously

25   reviewed this issue noting first that any violation of the SVPA is a state law violation that is not

26   grounds for federal habeas relief. See Estelle, 502 U.S. at 67-68; Page v. King, 2015 U.S. Dist. LEXIS

27   126069, at *30. Even assuming that Petitioner had a constitutionally protected liberty interest arise

28   from the SVPA provisions requiring two concurring expert opinions, the Northern District found that

1  there was no violation of those provisions:

2    Under the SVPA, two concurring expert opinions are only required to support the
     initial petition to commit or re-commit. *See* Cal. Welf. & Inst. Code. §§ 6601(d)-
3    (f); *Reilly*, 57 Cal. 4th at 646-47. Petitioner's initial re-commitment petition in 2006
     was based on the concurrence at that time of two mental health experts (Dr. Coles and
4    Dr. Hupka) that he was an SVP. The later split of experts did not occur until 2012,
     when petitioner received updated evaluations pursuant to Section 6603(c). A split of
5    experts performing updated evaluations, after the initial petition to commit or re-
     commit, does not mean that the subject is no longer an SVP and does not require
6    dismissal of the petition under the SVPA. *See* Cal. Welf. & Inst. Code §
     6603(c); *Reilly*, 57 Cal.4th at 648; *Gray v. Superior Court*, 95 Cal. App.4th 322, 328,
7    115 Cal. Rptr. 2d 477 (2002). Rather, the "updated evaluations' primary purpose is
     evidentiary or informational." *Reilly*, 57 Cal.4th at 648. Therefore the failure to
8    conduct judicial review or release petitioner following the split expert opinions on
     petitioner's updated evaluations in 2012 did not violate either the SVPA or any
9    constitutionally protected liberty interest that it may have created.

10  Page v. King, 2015 U.S. Dist. LEXIS 126069, at *30-31. The Court agrees. Accordingly, because no

11  violation of California law occurred, Petitioner fails to demonstrate that he was denied his due process

12  rights by a violation of state law. Therefore, the Court recommends that Respondent's motion to

13  dismiss be granted.

14         b.      *Challenge to pre-commitment detainment on federal due process grounds*

15         Respondent contends that Petitioner cannot challenge his pre-commitment detention on federal

16  due process grounds. (Doc. 139 at 18-19.) Petitioner maintains that he can assert a claim under the due

17  process clause based on "long-established precedent in challenging SVP commitments." (Doc. 124 at

18  12-15; Doc. 144 at 5-8.)  In holding that this Court erred in abstaining under Younger, the Ninth

19  Circuit stated that:

20    [W]e do not speak to the merits of Page's due process claim. Indeed, the Supreme
      Court's recent opinion in *Manuel v. City of Joliet*, 137 S. Ct. 911, 197 L. Ed. 2d 312
21    (2017)—which held that "[i]f the complaint is that a form of legal process resulted in
      pretrial detention unsupported by probable cause, then the right allegedly infringed lies
22    in the Fourth Amendment," not the Due Process Clause, *id.* at 919—may doom Page's
      petition unless he is permitted to amend to allege a Fourth Amendment violation.
23

24  Page v. King, 932 F.3d 898, 905 (9th Cir. 2019).

25         In Manuel, 137 S.Ct. at 914-16, the plaintiff asserted in an § 1983 action that his Fourth

26  Amendment rights were violated when he was arrested and detained on a probable cause

27  determination "based entirely on made-up evidence." Id. at 916. Both the district court and the Seventh

28  Circuit viewed the Fourth Amendment as inapplicable to the latter charge, but the Supreme Court

1  disagreed. Id. at 916-17, 919. The Court held that a Fourth Amendment violation can occur after "the

2  start of legal process," when fabricated evidence taints that process; in such a case, though "[l]egal

3  process has gone forward, . . . it has done nothing to satisfy the Fourth Amendment's probable cause

4  requirement." Id. at 918-19. "If the complaint is that a form of legal process resulted in pretrial

5  detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth

6  Amendment." Id. at 919.

7         Courts have noted that Manuel does not hold expressly that the Fourth Amendment provides

8  the exclusive basis for a claim asserting pre-trial deprivations based on fabricated evidence. Petitioner

9  relies in part on Cole v. Carson, 935 F.3d 444, 451 n.25 (5th Cir. 2019) for the argument that he may

10 also assert error under the Fourteenth Amendment (Doc. 124 at 15). However, without analysis of

11 Manuel, Cole merely cites to its earlier opinion in Jauch v. Choctaw Cty., 874 F.3d 425, 429 (5th Cir.

12 2017), and then extends Jauch, without explanation, to support its position that a Fourteenth

13 Amendment claim may be brought on facts similar[6] to those of Manuel.  However, Jauch does not

14 support that proposition. In Jauch, the plaintiff admitted that her arrest was supported by probable

15 cause but asserted that her detention was unlawful because she was not brought before the court in a

16 timely manner. Id. at 427.  Rather than finding Manuel did not apply, the court found Manuel

17 comported with its prior analysis of the interplay between the Fourth and Fourteenth Amendments.

18 The Jauch court found,

19    The district court treated Jauch's due process claim as a Fourth Amendment claim,
      reasoning that "[b]ecause an arrest is a seizure, ... the more particularized Fourth
20    Amendment analysis [is] appropriate" and concluding that because probable cause
      supported Jauch's arrest, there was no constitutional violation. This analysis dooms
21    Jauch's claim and seemingly means the Constitution is not violated by prolonged
      pretrial detention so long as the arrest is supported by probable cause.
22
      While this appeal was pending, the Supreme Court issued Manuel v. City of Joliet,
23    which held that a defendant seized without probable cause could challenge his pretrial
      detention under the Fourth Amendment. —— U.S. ——, 137 S.Ct. 911, 917, 197
24    L.Ed.2d 312 (2017). Manuel does not address the availability of due process challenges
      after a legal seizure, and it cannot be read to mean, as Defendants contend, that only the
25    Fourth Amendment is available to pre-trial detainees. For example, even when the
      detention is legal, a pre-trial detainee subjected to excessive force properly invokes the

26

27 ---
   [6] In Cole, the plaintiff was arrested and charged with crimes based upon fabricated evidence—the same evidence which
   gave rise to the grand jury determination that probable cause existed for the charges. Cole asserted a Fourth Amendment
28 claim for the unlawful arrest and a Fourteenth Amendment claim for the filing of "false charges"—meaning, charges filed
   upon fabricated evidence.

1

2

3

        Fourteenth Amendment. See, e.g., <u>Brothers v. Klevenhagen</u>, 28 F.3d 452, 455 (5th Cir. 1994). So, too, may a legally seized pre-trial detainee held for an extended period without further process. This Court has already addressed the interplay between the Fourth and Fourteenth Amendment, and Manuel fits with these prior cases.

4

<u>Id</u>. at 429.

5

6

7

8

9

10

11

12

13

14

15

16

        Unlike in <u>Jauch</u>, Petitioner does not concede there was probable cause to support the SVP detention; to the contrary, he claims, as the plaintiff did in <u>Manuel</u>, that there was no probable cause to support his SVP detention and that the probable cause determination was due to a fraud perpetrated on the court. In so doing, he asserts that he was not an SVP as of 2006, his detention is unlawful and prays this Court release him and terminate the SVP proceedings. (Doc. 124 at 15) Accordingly, legal posture of <u>Manuel</u> is akin to the current situation and counter to that in <u>Jauch</u>. Relying upon the wisdom of the United States Supreme Court, the Court finds that Petitioner's challenge to his seizure without probable cause must be brought under the Fourth Amendment rather than the due process clause (See <u>Manuel</u>, 137 S. Ct. at 918 (a pretrial detainee's claim that he was unlawfully detained without probable cause was properly brought under the Fourth Amendment). Thus, the Court recommends that Respondent's motion to dismiss based on Petitioner's challenge on federal due process grounds be granted.

17

2.      Abstention

18

19

20

21

        Respondent continues to argue that abstention applies because Petitioner seeks dismissal of the pending recommitment proceedings. (Doc. 139 at 8-9; Doc. 142 at 4.) Specifically, Respondent contends that Petitioner cannot enjoin the ongoing state commitment proceedings, he can only seek release from custody pending trial. (Doc. 139 at 8; Doc. 142 at 4.)

22

23

24

25

26

27

28

        Absent extraordinary circumstances, "interests of comity and federalism instruct [federal courts] to abstain from exercising our jurisdiction in certain circumstances when . . . asked to enjoin ongoing state enforcement proceedings." <u>Nationwide Biweekly Admin., Inc. v. Owen</u>, 873 F.3d 716, 727 (9th Cir. 2017). "<u>Younger</u> abstention is appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial

1    proceeding." Arevalo v. Hennessy, 882 F.3d 763, 765 (9th Cir. 2018) (alterations and internal

2    quotation marks omitted). But "even if Younger abstention is appropriate, federal courts do not invoke

3    it if there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would

4    make abstention inappropriate.'" Id. at 765-66 (quoting Middlesex Cnty. Ethics Comm. v. Garden

5    State Bar Ass'n, 457 U.S. 423, 435, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982)).

6          Regarding the abstention issue, the Ninth Circuit concluded that Petitioner's claim fits squarely

7    within the "irreparable harm" exception to Younger abstention set forth in Arevalo v. Hennessy, 882

8    F.3d 763 (9th Cir. 2018), because (1) regardless of the outcome at trial, a post-trial adjudication will

9    not fully vindicate his right to a current and proper pretrial probable cause determination, and (2) his

10   claim, which could not be raised in defense of the criminal prosecution, could not prejudice the

11   conduct of the trial on the merits. Page v. King, 932 F.3d 898 at 904. Though the Court finds some

12   merit to Respondent's argument, considering the Ninth Circuit's prior conclusion, the Court

13   recommends that Respondent's motion to dismiss based on abstention be **DENIED**.

                               **RECOMMENDATION**

14

15         Accordingly, the Court **RECOMMENDS** as follows:

16         1)    Petitioner's motion for leave to file second amended petition (Doc. 125) be **DENIED**;

17         2)    Petitioner's motion to declare state court exhaustion of Fourth Amendment claim to be

18               unnecessary or excused, or alternatively, to stay and abey the instant proceedings

19               pending exhaustion (Doc. 127) be **DENIED AS MOOT**;

20         3)    Respondent's motion to dismiss the first amended petition (Doc. 139) be **GRANTED**.

21         This Findings and Recommendation is submitted to the United States District Court Judge

22   assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

23   Local Rules of Practice for the United States District Court, Eastern District of California.  Within

24   thirty days after being served with a copy, any party may file written objections with the Court and

25   serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's

26   Findings and Recommendation."  Replies to the objections shall be served and filed within ten court

27   days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant

28   to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified

1    time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

2    Cir. 1991).

3

4    IT IS SO ORDERED.

5         Dated:    **June 9, 2020**                              **/s/ Jennifer L. Thurston**

6                                                           UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28